**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THERESA RANKINS, | Case No. CV 09-8925 JCG |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**INTRODUCTION AND SUMMARY**

On December 17, 2009, plaintiff Theresa Rankins ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant" or "Commissioner"), seeking review of a denial of disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). [Docket No. 4.]

On February 16, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 11, 13.]

Pursuant to a December 18, 2009 order regarding further proceedings, Plaintiff submitted a brief in support of her complaint ("Pl.'s Br.") on March 22,

2010. [Docket No. 14.] On April 13, 2010, Defendant submitted his opposition brief ("Def's. Br."). [Docket No. 15.]

On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 16.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 17, 18.]

On April 26, 2010, Plaintiff filed her reply brief ("Reply"). [Docket No. 20.] The Court deems the matter suitable for adjudication without oral argument.

In sum, having carefully studied, *inter alia*, the parties' written submissions and the administrative record, the Court concludes that, as detailed below, the Administrative Law Judge ("ALJ") erred in his step-two analysis by failing to find Plaintiff's mental impairment was severe, which was established by Plaintiff's treating psychiatrist Todd M. Hutton, M.D. The Court thus remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.
## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was 49 years of age on the date of her administrative hearing, has a college education. (Administrative Record ("AR") at 20, 23, 143, 151.) Her past relevant work includes employment as a customer service representative, retail sales clerk, and an assembler/tester of electronics. (*Id.* at 16, 44.)

Plaintiff protectively filed for DIB and SSI on January 17, 2007, alleging that she has been disabled since November 5, 2005 due to chronic headaches, vision impairment, anxiety attacks, and pain. (AR at 47, 49, 143, 147.) Plaintiff's applications were denied initially and upon reconsideration, after which she filed a timely request for a hearing. (*Id.* at 47, 48, 49, 53, 63, 68, 75, 76.)

On March 10, 2009, Plaintiff, represented by counsel, appeared and testified at a hearing before an ALJ. (AR at 20, 22-44.) The ALJ also heard testimony from

Elizabeth Ramos, a vocational expert ("VE"). (*Id.* at 20, 44-46.)

On April 23, 2009, the ALJ denied Plaintiff's request for benefits. (AR at 8-17.) Applying the five-step sequential evaluation process – which is discussed below – the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (*Id.* at 10.)

At step two, the ALJ found that Plaintiff suffers from severe impairments consisting of "chronic headaches and disc protrusions at multiple levels of the cervical spine." (AR at 11 (emphasis and citations omitted).)

At step three, the ALJ determined that the evidence does not demonstrate that Plaintiff's impairment, either individually or in combination, meet or medically equal the severity of any listing set forth in the Social Security regulations.[1] (AR at 12.)

The ALJ then assessed Plaintiff's residual functional capacity[2] ("RFC") and determined that she can "lift and carry 20 pounds occasionally, 10 pounds frequently, without further significant limitation." (AR at 12 (emphasis omitted).)

The ALJ found, at step four, that Plaintiff can perform her past relevant work as a customer service representative, retail sales clerk, or assembler/tester of electronics. (AR at 16.) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act. (*Id.* at 9, 17.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 1-3, 4.) The ALJ's decision stands as the

---

[1] *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

final decision of the Commissioner.

## III.

## **APPLICABLE LEGAL STANDARDS**

A.   Five-Step Inquiry to Ascertain a Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits:  (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements.  The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity?  If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months?  If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner under 20 C.F.R. part 404, subpart P, appendix 1?  If so, the claimant is automatically determined to be disabled.

Fourth, is the claimant capable of performing his past work?  If so, the claimant is not disabled.

Fifth, does the claimant have the so-called "residual functional capacity" to perform some other type of work?   The critical question posed here is whether the claimant can, in light of the impairment and his or her age, education and work experience, adjust to another form of gainful employment?

If a claimant is found "disabled" or "not disabled" along any of these steps, there is no need to complete the remaining inquiry.  20 C.F.R. §§ 404.1520(a)(4) &

416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

### B. Standard of Review on Appeal

This Court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as amended* Dec. 21, 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.
### ISSUES PRESENTED

Four disputed issues are presented for decision here:

1. whether the ALJ improperly evaluated Plaintiff's treating psychiatrist's

1 opinion, (*see* Pl.'s Br. at 2-8; Reply at 1-5);

2     2.    whether the ALJ properly held that Plaintiff's mental and vision
3 impairments are not severe, (Pl.'s Br. at 8-9; Reply at 5-6);

4     3.    whether the ALJ properly considered Plaintiff's testimony, (Pl.'s Br. at
5 9-10; Reply at 6-8); and

6     4.    whether the ALJ improperly evaluated Plaintiff's treating physician's
7 opinion. (Pl.'s Br. at 11; Reply at 8-10.)

8     Under the circumstances here, the Court finds the issue of the ALJ's
9 evaluation of the medical evidence and his step-two assessment with respect to
10 Plaintiff's mental impairment to be dispositive of this matter, and does not reach the
11 remaining issues.

## V.

## DISCUSSION

14     Plaintiff contends that the ALJ erred in concluding that she does not suffer
15 from a severe mental impairment. (*See* Pl.'s Br. at 8.) Specifically, Plaintiff
16 maintains that "the ALJ erred in rejecting the opinions of [her treating psychiatrist]
17 and relying on those of the state agency physicians in order to conclude at Step Two
18 that [Plaintiff's] mental impairments were non-severe." (*Id.*)

19     Defendant argues that "the ALJ found the evidence did not establish the
20 presence of more than isolated and transitory psychiatric problems" and the "ALJ's
21 interpretation of this evidence was not unreasonable." (Def.'s Br. at 2.) Further,
22 Defendant states that "[a]rguably, the ALJ did not reject [the treating psychiatrist's]
23 opinion, and found it was consistent with a finding that Plaintiff's mental
24 impairment was non-severe" and that, in any event, "any perceived error was
25 harmless, because [the treating psychiatrist's] assessment was consistent with the
26 ALJ's ultimate determination that Plaintiff could perform her past relevant work as a
27 retail sales clerk." (*Id.*)

28

### A. Step-Two Inquiry Requires A "*De Minimus*" Threshold Showing

The threshold inquiry at step two is whether or not a claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). The step two inquiry is defined as "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001, *as amended* Aug. 9, 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen*, 80 F.3d at 1289-90. "Important here, at the step two inquiry, is the requirement that the ALJ must consider *the combined effect* of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Id.* at 1290 (emphasis added).

"An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work."[3] *Smolen*, 80 F.3d at 1290 (internal quotation marks and citation omitted). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28,[4] 1985

---

[3] "'Basic work activities' are defined as including such capabilities as use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting[.]" *Edlund*, 253 F.3d at 1159 (internal citations omitted).

[4] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246

7

1 WL 56856, at *3).

2     In addition, "if an adjudicator is unable to determine clearly the effect of an
3 impairment or combination of impairments on the individual's ability to do basic
4 work activities, the sequential evaluation should not end with the not severe
5 evaluation step." *Webb*, 433 F.3d at 687 (quoting SSR 85-28, 1985 WL 56856, at
6 *4) (brackets omitted).

7     B.    <u>Medical Assessments of Plaintiff</u>

8     From June 2006 through July 2008, psychiatrist Todd M. Hutton, M.D. ("Dr.
9 Hutton") treated Plaintiff in connection with work-related injuries, which allegedly
10 resulted from being stricken in the head by a hammer at her former employment.
11 (AR at 344, 350-52.)

12     On May 15, 2007, Dr. Hutton completed a Primary Treating Physician's
13 Progress Report ("Progress Report") and diagnosed Plaintiff with "major depressive
14 disorder, single episode, moderate." (AR at 349.) Dr. Hutton indicated that Plaintiff
15 "reported continued memory and concentration problems, loss of energy, physical
16 pain, headaches and anger." (*Id.*) Dr. Hutton also opined that Plaintiff was "nearing
17 permanent and stationary" status. (*Id.*)

18     On June 4, 2007, Sharon Jacobson, M.D. ("Dr. Jacobson"), a non-examining
19 physician completed a Psychiatric Review Technique form. (AR at 330-40.) Dr.
20 Jacobson assessed Plaintiff's mental impairment based on records from December
21 29, 2006 until June 4, 2007. (*Id.* at 330.) Dr. Jacobson found Plaintiff's mental
22 impairment not severe. (*Id.* at 330.)

23     On June 28, 2007, Dr. Hutton completed a Treating Psychiatrist's
24 Comprehensive Permanent and Stationary Report ("Comprehensive Report"). (AR
25 at 350-61.) Dr. Hutton's Comprehensive Report was "based on the history provided
26 by [Plaintiff, a] review of medical records, psychological test data, and [his] clinical

27 _____

28 F.3d 1195, 1203 n. 1 (9th Cir. 2001) (internal citations omitted).

1    observations." (*Id.* at 350.)  Based on a mental status examination, Dr. Hutton found
2    Plaintiff to be "polite, responsive, and cooperative with the examination procedure."
3    (*Id.* at 356.)  Dr. Hutton described Plaintiff as "somewhat tense and agitated[ and
4    s]peech was frequently pressured and rather loud." (*Id.*)  Dr. Hutton determined her
5    "intellectual functioning" to be "impaired" and found "a slight evasive quality or
6    vagueness in her report of past personal history." (*Id.* at 357.)

7         In his Comprehensive Report, Dr. Hutton found Plaintiff's "ability to
8    comprehend and follow instructions," "ability to perform simple and repetitive
9    tasks," "ability to maintain a work pace appropriate to a given work load," "ability to
10   relate to other people beyond giving and receiving instructions," and "ability to
11   influence people" to be "slightly impaired." (*See* AR at 359-60.)  Dr. Hutton found
12   Plaintiff's "ability to perform complex and varied tasks," "ability to make
13   generalizations, evaluations, or decisions without immediate supervision," and
14   "ability to accept and carry out responsibility for direction, control, and planning" to
15   be "moderately impaired." (*See id.* at 360.)

16        On July 15, 2007, Dr. Hutton completed a Progress Report and diagnosed
17   Plaintiff with depressive disorder, not otherwise specified.  (AR at 348.)  Dr. Hutton
18   noted that Plaintiff reported "staying in bed for days at a time." (*Id.*)  Dr. Hutton
19   determined that Plaintiff reached "permanent and stationary" status on June 25,
20   2007. (*Id.*)

21        On August 15, 2007, Dr. Hutton completed a Progress Report.  (AR at 347.)
22   Dr. Hutton indicated that Plaintiff "continues to report memory and concentration
23   problems, sight problems, mood swings, loss of energy, physical pain, headaches
24   and anger." (*Id.*)

25        On January 25, 2008, non-examining physician Paul M. Balson, M.D. ("Dr.
26   Balson") completed a one-page case analysis of Plaintiff.  (AR at 341.)  In the case
27   analysis, Dr. Balson stated that "psych database [was] reviewed" and affirmed an
28   initial level finding that Plaintiff's mental impairment is non-severe. (*Id.*)

1      On April 15, 2008, Dr. Hutton completed a Progress Report and noted that
2 "[d]uring the months of March and April, [Plaintiff's] psychiatric condition
3 deteriorated. She was very depressed and expressed [suicidal ideation] to her
4 family." (AR at 346.) Dr. Hutton stated that Plaintiff "was sent to Huntington
5 Memorial Hospital emergency room for WIC 5150 evaluation and possible
6 hospitalization." (*Id.*)

7      On May 14, 2008, Dr. Hutton wrote a letter stating, "[p]lease be advised that
8 [Plaintiff] is currently in treatment in these offices[]" and "for any further
9 information, please feel free to contact this office." (AR at 215.)

10     On May 15, 2008, Dr. Hutton completed a Progress Report. (AR at 345.) He
11 found Plaintiff's "psychiatric condition seemed to improve slightly." (*Id.*) Dr.
12 Hutton explained that "we are working on recognizing behaviors that [Plaintiff] can
13 control and those that she cannot thus making better choices." (*Id.*)

14     On July 15, 2008, Dr. Hutton completed a Progress Report. (AR at 344.) Dr.
15 Hutton indicated that Plaintiff "reports she is living out of her car and staying with
16 friends" and "[a]t this point, . . . denied any suicidal ideation." (*Id.*)

17     C.     ALJ's Rejection of Dr. Hutton's Opinion
18     In his decision, the ALJ rejected Dr. Hutton's opinion:
19          In the psychiatric realm, the medical record reflects that
20          [Plaintiff] was evaluated by [Dr. Hutton] in June 2007. Based
21          upon a clinical examination, including a mini-mental status
22          exam, Dr. Hutton diagnosed [Plaintiff] with a depressive
23          disorder, not otherwise specified, and afforded her a global
24          assessment of functioning score of 55, indicative of moderate
25          psychiatric symptoms. While he opined that [Plaintiff] had only
26          slight limitations in five of eight areas of work-related mental
27          functioning, he also opined that she had moderate symptoms in
28          three areas involving complex work and executive functions.

10

> However, while Dr. Hutton prepared several workers compensation update forms, prior to and after the aforementioned examination report, he has provided no treatment records. In addition, he determined that [Plaintiff's] psychiatric condition was "permanent and stationary" as of June 25, 2007, and remains so through July 2008, her last workers compensation update report. On the other hand, the medical record demonstrates that [Plaintiff] was evaluated by two state agency psychiatric consultants[, Dr. Jacobson and Dr. Balson]. They . . . determined that her psychiatric symptoms, to the extent they exist, were "nonsevere". In light thereof, and considering Dr. Hutton's modest findings noted in his June 2007 report, and in the absence of any meaningful psychiatric treatment records demonstrating that [Plaintiff's] psychiatric symptoms have been both chronic and persistent, for any 12 month period, at times material hereto, I must conclude that the medical record fails to establish the presence of more than isolated and transitory psychiatric symptoms.

(AR at 11-12 (citations omitted).)

D. <u>The ALJ Erred in Finding Plaintiff's Mental Impairment Non-Severe</u>

Having carefully reviewed the record and the parties' papers, the Court is persuaded that the ALJ's rejection of Dr. Hutton's opinion was unwarranted. Four reasons guide this Court's determination.

First, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in rejecting a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995, *as amended* Apr. 9, 1996) ("Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial

evidence in the record[.]") (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725.

The ALJ's rejection of Dr. Hutton's opinion based on an absence of treatment records is not a specific and legitimate reason. Dr. Hutton indicated that Plaintiff "is currently in treatment in [his] offices[]" and to contact his office "for any further information[.]" (AR at 215.) To the extent the record was unclear as to Dr. Hutton's findings, the ALJ was obligated to develop the record to clarify the ambiguity. *See Mayes*, 276 F.3d at 459-60 (duty to develop record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence[]"); *Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous."); see also 20 C.F.R. §§ 404.1512(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.") & 416.912(e)(1) (same).

Second, while the ALJ recognized that Dr. Hutton prepared the Progress Reports and Comprehensive Report in the context of Plaintiff's workers' compensation claim, (*see* AR at 12), the ALJ did not indicate that he recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and accounted for those differences in evaluating the medical evidence. (*See generally id.* at 11-12); *see Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002) (ALJ's opinion "should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand,

12

and took those differences into account in evaluating the medical evidence."); *see also Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) ("The categories of work under the Social Security disability scheme are measured quite differently[ than under the California workers' compensation system]. . . . It is clear from the record that the ALJ did not adequately consider this distinction.").

For example, the ALJ explained that Dr. Hutton "determined that [Plaintiff's] psychiatric condition was 'permanent and stationary' as of June 25, 2007, and remains so through July 2008[.]" (AR at 11.) However, there is no evidence that the ALJ "adequately considered the distinction between the workers' compensation rubric utilized by [Dr. Hutton] and the scheme used to assess disability under the Commissioner's regulations." *Booth*, 181 F. Supp. 2d at 1104.

"Permanent and stationary" is a term of art relevant to workers' compensation law under California law. *Viramontes v. Astrue*, 2010 WL 3212861, at 7 n. 5 (E.D. Cal. 2010). "A disability is considered 'permanent and stationary' for California workers' compensation purposes 'after the employee has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time.'" *Id.* (internal citations omitted).

Accordingly, the ALJ failed to properly consider Dr. Hutton's use of workers' compensation terminology. *See Payan v. Chater*, 959 F. Supp. 1197, 1204 (C.D. Cal. 1996) ("[T]he ALJ failed to properly consider [treating physician's] use of workers' compensation terminology. . . . Thus, the ALJ's findings that plaintiff has only slight mental limitations and 'mild' deficiencies in concentration are not supported by substantial evidence.").

Third, the ALJ's assertion that there is an "absence of any meaningful psychiatric treatment records demonstrating that [Plaintiff's] psychiatric symptoms have been both chronic and persistent, for any 12 month period," (AR at 12), is belied by the record. Dr. Hutton treated Plaintiff for over two years from June 2006

13

1  through July 2008.  (*See id.* at 344-62.)  Further, a thorough and fair reading of Dr.
2  Hutton's Progress Reports shows that Dr. Hutton consistently diagnosed Plaintiff
3  with depressive disorder.  (*See id.*)
4       Fourth, the ALJ's adoption of the opinions of the two non-examining and non-
5  treating physicians, Drs. Jacobson and Balson, standing alone, does not constitute
6  "substantial" evidence here.  *See Lester*, 81 F.3d at 832 ("In the absence of record
7  evidence to support it, the nonexamining medical advisor's testimony does not by
8  itself constitute substantial evidence that warrants a rejection of . . . the examining
9  [physician]'s opinion."); *Erickson v. Shalala*, 9 F.3d 813, 818 n. 7 (9th Cir. 1993)
10 ("the non-examining physicians' conclusion, *with nothing more*, does not constitute
11 substantial evidence[]") (internal quotation marks, brackets and citation omitted)
12 (italics in original); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984) (when
13 the non-treating, non-examining physician's opinion conflicts with the conclusions
14 of examining physicians, that conclusion does not constitute substantial evidence).
15       Defendant argues that "if this Court finds the ALJ erred in evaluating the
16 evidence from Dr. Hutton, any perceived error was harmless" because the ALJ
17 questioned the VE "whether an individual with Plaintiff's [RFC] and also restricted
18 to simple repetitive tasks, could perform other work in the national or local
19 economy" and the VE answered in the affirmative.   (Def.'s Br. at 2-3.)  The Court is
20 not convinced.
21       Dr. Hutton's opinion contains limitations that are not contained in the RFC
22 adopted by the ALJ and the hypothetical questions posed to the VE.  While the ALJ
23 did question the VE whether an individual that "can occasionally lift 20 pounds, can
24 frequently lift 10 pounds, can stand or walk for six hours in an eight-hour day, can
25 sit for six hours in an eight-hour day" and "such individual is limited to simple
26 routine, repetitive tasks" is able to perform Plaintiff's past relevant work, the ALJ
27 did not include limitations opined by Dr. Hutton, such as his limitation that
28 Plaintiff's ability to perform simple and repetitive tasks is "slightly impaired" or that

1  Plaintiff's ability to "maintain a work pace appropriate to a given work load" is
2  "slightly impaired."  (*Compare* AR at 44-45 *with id.* at 359.)
3        In light of the Court's conclusion that the ALJ improperly rejected the opinion
4  of Plaintiff's treating psychiatrist Dr. Hutton, which provides that Plaintiff suffers
5  from depressive disorder, the Court is satisfied that Plaintiff submitted sufficient
6  medical evidence to establish that her mental impairment is severe, *to wit*, Plaintiff
7  satisfied her burden of producing evidence that her ability to perform basic work
8  functions is more than minimally limited by her combination of documented
9  impairments.  *See Edlund*, 253 F.3d at 1158 (quoting *Smolen*, 80 F.3d at 1290) (The
10 step-two inquiry is defined as "'a *de minimis* screening device to dispose of
11 groundless claims.'").
12       In short, the ALJ's conclusion that Plaintiff's mental impairment is not severe
13 is not clearly supported by the medical evidence.  *See Webb*, 433 F.3d at 687
14 (holding an ALJ's determination that a person does not have a medically severe
15 impairment must be "clearly established by [the] medical evidence[]") (internal
16 quotation marks and citation omitted).

## VI.
## **REMAND IS APPROPRIATE**

19       This Court has discretion to remand or reverse and award benefits.  *McAllister*
20 *v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).  Where no
21 useful purpose would be served by further proceedings, or where the record has been
22 fully developed, it is appropriate to exercise this discretion to direct an immediate
23 award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004);
24 *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000),
25 *cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be
26 resolved before a determination can be made, and it is not clear from the record that
27 the ALJ would be required to find plaintiff disabled if all the evidence were properly
28 evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211

F.3d at 1179-80.

Here, remand is required because the ALJ erred at step two of the sequential evaluation process by concluding that Plaintiff's mental impairment is not severe. On remand, the ALJ shall assume that Plaintiff's mental impairment is severe.[5] The ALJ shall further develop the record if necessary. The ALJ shall also reassess the medical opinions in the record with respect to Plaintiff's physical impairments and provide sufficient reasons under the applicable legal standards for rejecting any portion of the medical opinions. The ALJ shall reassess step two through five to determine what work, if any, Plaintiff is capable of performing.

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered **REVERSING** the decision of the Commissioner denying benefits and **REMANDING** the matter for further administrative action consistent with this decision.

Dated: October 22, 2010

_____

Hon. Jay C. Gandhi
United States Magistrate Judge

---

[5] In light of the Court's remand instructions, it is unnecessary for the Court to address Plaintiff's remaining contentions. (*See* Pl.'s Br. at 8-11; Reply 5-10.)

16